UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL WILLIAMS, et al.,                          Case No. 1:11-cv-401

          Plaintiffs,                          Dlott, J.
                                                 Bowman, M.J.

      v.

WARDEN, LEBANON CORRECTIONAL, et al.,

          Defendants.

## REPORT AND RECOMMENDATION

Plaintiffs Michael Williams, Edward Williams, Anthony Edwards, Kenny Jasper, current and former inmates at the Lebanon Correctional Institution (LeCI) bring this civil rights action under 42 U.S.C. § 1983 against LeCI employees Defendant Officer Cole, Officer Crosby, Lt. Couch, Officer Demartino, Officer Deters, Officer Faine, Officer Hubbard, Officer Marinoich, Officer Sailor and Officer Traud.[1]  Plaintiffs are alleging deprivations of their Constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution.  (Doc. 1).  This matter is now before the Court on Defendants' motion for summary judgment (Doc. 54) and the parties' responsive memoranda.  (Docs. 55, 64, 65, 70, 71).

    **I.**    **Background and Facts**

Plaintiffs' complaint alleges a claim of excessive use of force in violation of the Eighth Amendment and a claim for assault and battery under state law by these

---

[1] Upon *sua sponte* review of the complaint, the Court dismissed Plaintiff's' claims against several of the named defendants; including Brunswick (Brunsman), Porter, Harris, Bell, Frisbee, Shanklin, McPorter, Taggart, Holmes, Williams, Link, Burlile, Totly, Edwards, Pueblo, Dennison, and Humphrey. (*See* Doc. 22).

defendants. Plaintiffs' claims arise out of a December 7, 2010 incident involving over one hundred (100) inmates who, at approximately 8:40 PM, refused to engage in lock down.  As a result, the inmates were required to return to their individual cells for the evening hours.  (Doc. 54, Ex. A).  Plaintiffs, who are proceeding *pro se*, allege that they were repeatedly beaten and punched in the face, head and body by LeCI Officers Demartino, Corsby, Hubbuard, Traud, Cole, Faine, Sailor, Marinoich, Deters, and Couch.  Plaintiffs further allege that they were also subjected to racial slurs during such beatings and threatened with disciplinary action if they complained about the beatings. Defendants now move for summary judgment on Plaintiffs' claims.  In support of their motion for summary judgment, Defendants present the following evidence:

At all times relevant to this action, Plaintiff's resided in B-Block at LeCI.  On December 6, 2010, inmates were circulating rumors of revolt to the Modified Movement Policy ("MMP").  (Doc. 54, Ex. A, December 17, 2010 Incident Report at p. 4).  On December 7, 2010, an unrelated Block refused to go to breakfast and was consequently locked down and inmates were served meals in their cells.  *Id.*  On that same day, there were increased rumors of revolt to the MMP; more inmates were placed in Security Control for creating a disturbance due to the MMP, and; non-participating inmates were being threatened by other inmates with beatings should they refuse to join in with the revolt.  *Id.*

At 8:40 PM the revolt commenced, and by 9:02 PM, B-Block, where the instant Plaintiffs resided, was secured/contained with a single burst of Oleoresin Capsicum ("OC") spray.  (Doc. 54, Ex. A at p 1 & 5; Ex. D, Declaration of Peter Cole, ¶ 9; Ex. E,

Declaration of Andrew Crosby ¶ 6; Ex. F, Declaration of Michael DeMartino, ¶ 6; Ex. G, Declaration of David Deters, ¶ 8; Ex. I, Declaration of Patrick Faine, ¶ 6; Ex. M, Declaration of Daniel Traub ¶ 6).  The video of the block where the Plaintiffs resided, B-Block, reveals closed cell doors and correction staff running through the flooded the floor, occasioned by the inmates flooding the range with their stopped up toilets.  (Doc. 54, Ex. S).  Although a disturbance can be seen in the background, various views of B Block do not show any activity that correlates with Plaintiffs' allegations in this matter.

With respect to Plaintiffs' alleged injuries, the Medical Exam Reports ("MER") of the Plaintiffs in this matter show little or no injuries to Plaintiffs from the December 7, 2010 incident.  Specifically, Plaintiff Michael Williams', December 7, 2010 MER reflects that the objective findings for his complaint of left jaw pain as being "no deformity of jaw, able to move easily, no injuries to head, torso, upper or lower extremities" … "no treatment needed."  (Doc. 54, Ex. N).  Plaintiff Edward Williams' physical assessment on December 7, 2010 revealed "no injuries or abrasions, either present or healed, on head, torso, upper or lower extremities, no respiratory distress, alert and oriented to person, place and time, steady gait." (Doc. 54, Ex. O).  The treatment provided to Plaintiff Edward Williams was education for ineffective coping as related to his inability to follow institutional policies.  *Id.*  Plaintiff's Anthony Edwards' MER on December 7, 2010, shows superficial abrasions to his back, left elbow and left flank.  (Doc. 54, Ex. P). Treatment rendered included education on Inmate Edwards' ineffective coping related to fighting and unruly behavior.  *Id.*  Last, Plaintiff Kenny Jasper did not seek any medical attention until December 20, 2012, approximately two weeks after the

December 7, 2010 disturbance.  Inmate Jasper's MER showed a small healing laceration above his right eyebrow and no other deformity noted on his head, neck, trunk or extremities.  (Doc. 54, Ex. Q).  No treatment was rendered to Inmate Jasper. *Id.*

LeCI received a "Point of Pride" commendation from the legislative watchdog of correctional facilities, the Correction Institution Investigation Committee ("CIIC") regarding their handling of the December 7, 2010 inmate disturbance.  (Doc 54, Ex. 18).  Notably, after conducting an investigation into the riot, the CIIC issued the following as a Point of Pride for LeCI:

> In response to the implementation of the modified lockdown schedule, inmates staged a protest in December 2010. The incident began with two blocks returning from Recreation before locking down for the night. Upon returning to the block, the inmates shut their doors and refused to lock. They put Vaseline on the cameras to prevent later identification and began destroying state property.  Staff were pulled from the housing units to protect their safety. The action quickly spread to other blocks, with an estimated 1,000 inmates involved, albeit to varying degrees.
>
> Staff reacted with exemplary professionalism and training. Staff from neighboring Warren Correctional Institution reportedly responded to the institution in ten minutes. The combined Immediate Response Teams rapidly deployed less-than lethal weapons, such as a stinger grenade and OC spray, which effectively shut down the situation. Despite the number of inmates involved, only one staff and one inmate reported injuries. Equally remarkable, only a handful of people even brought up the December incident to the CIIC inspection team, despite CIIC's survey questions on safety.
>
> Overall, Lebanon Correctional Institution's Warden and staff should be highly commended for true grace and professionalism under fire. They made quick decisions in the heat of the moment, they shut down a potentially explosive situation, and everyone was able to walk away. There is no greater test for an institution and Lebanon Correctional Institution passed with flying colors.

4

(Doc. 54, Ex. 18).

In addition, in early 2011, the Lebanon City Prosecutor's Office was presented a case by the Ohio Highway Patrol regarding Plaintiff Anthony Edwards allegations that he sustained injuries from correctional staff during the December 7, 2010 disturbance at LeCI.  (Doc. 54, Ex. H, Graber Aff.).  Upon investigation, Lebanon City Prosecutor Matthew Graber, Esq., determined that there was not enough evidence to prove that Plaintiff's Edwards' injuries were the result of being assaulted by officers at LeCI and declined prosecution of the matter.  *Id.*

## II.    Analysis

### A.    Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action.  *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.'"  *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*,

822 F.2d 1432, 1435 (6th Cir. 1987)).  The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir. 2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted.  *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*).  A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex,* 477 U.S. at 323-24.  The moving party need not support its motion with evidence disproving the opposing party's claims.  Rather, the moving party need only point out there is an absence of evidence supporting such claims.  *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex Corp.,* 477 U.S. at 325).  Nor must the Court search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80.  The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.      Defendants' motion for summary judgment**

Defendants maintain that the evidence in this case is so one-sided that no reasonable jury could find in favor of the Plaintiffs.  Thus, Defendants assert that they are entitled to judgment as a matter of law because they acted reasonably under the circumstances and only exerted sufficient force to restore safety and security to the institution. Defendants further contend that they are entitled to qualified immunity because they acted reasonably.  Plaintiffs ask the Court to deny Defendants' motion, asserting that genuine issues of material fact exist thereby precluding summary judgment.

*1.      Applicable Law*

 As detailed above, Plaintiffs' complaint alleges a claim of excessive use of force in violation of the Eighth Amendment and a claim for assault and battery under state law by these Defendants.   Thus, Plaintiffs' claims implicate the Eighth Amendment prohibition against "cruel and unusual punishments."  U.S. Const. amend. VIII; *see also Farmer v. Brennan*, 511 U.S. 825 (1994).

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law.  *Sigley v. City of Parma Hts.*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Prisoners are protected from the use of excessive force by the Eighth Amendment.   *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The Eighth Amendment standard focuses on the official's "obdurancy

and wantonness" and asks "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 319-21.   The test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993) (citation omitted).  In other words,

> [t]o ascertain whether excessive force was used under the Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Such a claim has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective component requires that the offending, non-penal conduct be wanton.

 *Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010) (quoting *Watkin*s, 1996 WL 499094, at *2 (citations omitted).

  2.    *Qualified Immunity*

Defendants assert that they are entitled to qualified immunity on all claims brought against them in their individual capacities.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial.  *Saucier v. Katz*, 533 U.S. 194, 200-201

8

(2001).   The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).  *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).   Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact.  *Pearson*, 555 U.S. at 231.

The Sixth Circuit has a three-prong test for evaluating a claim of qualified immunity.  First, the court determines whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred.   Second, the court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  Third, the court determines whether the plaintiffs have offered sufficient evidence indicating the alleged official actions were objectively unreasonable in light of clearly established constitutional rights.  *Meals v. City of Memphis, Tenn.,* 493 F.3d 720, 729 (6th Cir. 2007). *See also  Saucier v. Katz,* 533 U.S. 194, 201 (2001).  Plaintiff bears the burden of showing that a right is clearly established.  *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).   Defendants, however, bear the burden of showing that the challenged actions were objectively reasonable in light of the law existing at the time.  *Id.*

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

   3.   *Defendants are entitled to judgment as a matter of law*

As noted above, in order to determine if Defendants used excessive force in violation of Plaintiff's constitutional rights, the Court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  This inquiry also affects the applicability of Defendants' qualified immunity defense, as the first prong under the qualified immunity inquiry is whether a plaintiff's constitutional right was violated.  *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).

   For purposes of summary judgment, the Court must accept the Plaintiffs' version of events as true, and must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251-52.  Here, Plaintiffs Michael Williams and Edward Williams filed a response in opposition to Defendants' motion for summary judgment (as well as their own motion for summary judgment), consisting primarily of conclusory allegations of excessive force as outlined in the complaint.  (Docs. 64, 65).  Notably, in support of their claims, Plaintiffs attach newspaper articles and letters/notes from non-party inmates who claim they witnessed

10

unknown correctional staff employing excessive use of force during the disturbance at issue.  Plaintiff Anthony Edwards filed his own memorandum in response to Defendants' motion for summary judgment.  (Doc. 71).  Plaintiff Edwards submitted an unsworn affidavit asserting, *inter alia*, that the Ohio State Highway Patrol concluded that criminal charges should have been failed against the named Defendants by the Warren County Prosecutors Office.  Upon careful review, however, Plaintiffs have failed to offer any evidence, as outlined by Rule 56, showing that Defendants used excessive force in violation of their Eighth Amendment Rights.[2]

The newspaper articles and letters/notes from non-party inmates who claim they

---

[2] Plaintiff Edwards response also included his own unsworn affidavit, wherein he states, *inter alia*, that he needs additional time in which to obtain incident reports, use of force reports, photographs of injuries he suffered, and statements of witnesses "that are in the possession and control of defendants but have not be disclosed to me or provided to me by the Defendants in Discovery."  (Doc. 70 at 6).

When a motion for summary judgment is filed, the party opposing the motion may, by affidavit, explain why he is unable to present facts essential to justify the party's opposition to the motion. Fed. R. Civ. P. 56(d)(previously subsection (f)).  Thus, a Rule 56(d) affidavit is the proper method of requesting additional time to respond to a motion for summary judgment. *Cacevic v. City of Hazel Park*, 226 F.3d 483 (6th Cir. 2000).  A party seeking an extension of time must show the need for discovery, the material facts to be discovered, and the reasons for not previously discovering the information. *Id.* at 488.  In the absence of a sufficient Rule 56(f) affidavit, there is no justification for a court's determination that a motion for summary judgment will be premature until the close of discovery. *Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003).

Here, however, Plaintiff Edwards has failed to inform the Court what material facts he hopes to obtain through further discovery and how such discovery would alter the outcome of this action.  *See Cacevic*, 226 F.3d at 488.  Moreover, the discovery deadline in this matter was August 1, 2012.  (Doc 34).  Further, as noted by Defendants, the docket reflects that discovery, as propounded by all the Plaintiffs, (Anthony Edwards included) was produced as of May 8, 2012 (*See* Doc. 50) and there is no indication that any of the Plaintiffs either voiced objection to the produced discovery or made any subsequent requests.  Thus, to this extent that Plaintiff's response could be construed as a Rule 56(d) motion for additional discovery, Plaintiff's request is not well-taken because he fails to state why he has not previously requested any such discovery in this matter.  *See Cacevic*, 226 F.3d at 488 ("Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing to indicate to the district court . . . why it has not previously discovered the information.").  *See also Steele v. City of Cleveland*, 375 Fed. Appx. 536, 541, n. 3 (6th Cir. 2010) ("even if plaintiff had made her motion in the form of an affidavit, the district court would not have abused its discretion in denying additional discovery, as plaintiff made no showing why she had been unable to depose these alleged witnesses-or even obtain affidavits from them-in the six months that had elapsed since the lawsuit was filed. . . .").

witnessed unknown correctional staff employing excessive use of force during the disturbance at issue, offered by Plaintiffs' to support their claims, does not satisfy their requirement to set forth specific facts showing that there is a genuine issue for trial. Notably, the newspaper articles supplied by Plaintiffs are related to employee misconduct and/or management issues at LeCI, both of which are wholly unrelated to the December 2010 incident and/or Plaintiffs' claims of excessive force. Furthermore, the statements supplied by Plaintiffs' that they were assaulted by Defendants during the riot consist of conclusory allegations without any factual support. Notably, Plaintiffs' do not identify any of the named Defendants in this action, and the medical records establish that Plaintiffs' did not suffer any injuries as a result of the December 2010 incident. As detailed above, Defendants are entitled to use reasonable force as necessary to maintain order. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). There is no evidence that any of the Defendants engaged in sadistic and/or malicious behavior, which is required to show a constitutional violation. *See Hudson v. McMillian*, 503 U.S.1, 6 (1992).[3]

Even assuming that Plaintiffs' have established a question of fact relating to their excessive force claims, Defendants are nonetheless entitled to qualified immunity because Plaintiffs' have not shown that Defendants acted unreasonably. To the contrary, the evidence establishes that Defendants exerted reasonable force to restore order and quell the revolt. As explained above, qualified immunity "'gives ample room

---

[3] Plaintiff Jasper also failed to offer any evidence that he exhausted his administrative remedies, pursuant to Ohio Administrative Code 5120-9-3 (Doc #: 54-3, ¶ 9).

for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).  Viewing the facts in favor of Plaintiffs, there is no evidence that Defendants knowingly violated the law.

Finally, to the extent Plaintiffs claim the actions of Defendants violated Ohio state law, the Court should decline to exercise pendent jurisdiction over such claim because Plaintiffs fail to state a viable federal claim.  *See United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). Thus, any state law claims should be dismissed without prejudice for lack of jurisdiction.

## IT IS THEREFORE RECOMMENDED THAT:

Defendants' motion for summary judgment (Doc. 54) should be **GRANTED,** all remaining pending motions (Docs. 63, 65,) be **DENIED as MOOT**, and this matter **TERMINATED** on the Court's active docket.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL WILLIAMS, et al.,                          Case No. 1:11-cv-401

      Plaintiffs,                                      Dlott, J.
                                         Bowman, M.J.

     v.

WARDEN, LEBANON CORRECTIONAL, et al.,

      Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

14